UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:05-cr-0383 MCE DAD P |
| Respondent, | |
| v. | |
| FRANCISCO MIGUEL ANGEL NAJERA-GORDILLO, | FINDINGS AND RECOMMENDATIONS |
| Movant. | |

Movant is a federal prisoner proceeding pro se with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  On June 21, 2007, following his entry of guilty plea pursuant to a plea agreement, movant was convicted of conspiracy to possess with intent to distribute methamphetamine and possession with intent to distribute methamphetamine. Movant now seeks post-conviction relief on the grounds that his trial counsel rendered ineffective assistance.  Upon careful consideration of the record and the applicable law, the undersigned recommends that movant's § 2255 motion be denied.

/////

/////

_____

[1]  This motion was assigned, for statistical purposes, the following civil case number: No. 2:13-cv-1155 MCE DAD P.

1

1  **I. Procedural Background**

2    On May 31, 2006, pursuant to a written plea agreement, petitioner entered a plea of guilty

3  to count three of the indictment in which he was charged with possession of at least 50 grams of a

4  mixture or substance containing a detectable amount of methamphetamine, in violation of 21

5  U.S.C. §841(a)(1).  (ECF No. 29.)  Movant was sentenced by United States District Judge

6  William B. Shubb on October 17, 2006, to 292 months imprisonment in the custody of the United

7  States Bureau of Prisons.  (ECF No. 46.)[2]  He thereafter appealed his conviction and sentence to

8  the Court of Appeals for the Ninth Circuit.  (ECF No. 47.)  The Court of Appeals dismissed

9  movant's appeal on September 18, 2008, in light of the waiver of the right to appeal set forth in

10  his plea agreement.  United States v. Najera-Gordillo, 285 Fed. Appx. 461 (2008).  (ECF No.

11  104.)

12    On February 9, 2009, movant filed a motion on his own behalf seeking to set aside his

13  guilty plea and sentence pursuant to 28 U.S.C. § 2255.  (ECF No. 123.)  Therein, he claimed that

14  the trial court in its plea colloquy had misrepresented to him the maximum possible statutory

15  penalty he faced, in violation of Rule 11(b)(1)(H) of the Federal Rules of Criminal Procedure.

16  (Id.)  Movant also argued that his trial counsel rendered ineffective assistance by failing to

17  properly advise him of the potential sentencing range he faced and in failing to review the Pre-

18  sentence Investigation Report with him prior to his sentencing hearing.  (Id.)  By order filed

19  August 25, 2009, District Judge William B. Shubb granted movant's § 2255 motion, vacated his

20  guilty plea and sentence, and placed the matter on the court's calendar for trial setting.  (ECF No.

21  150.)[3]  Judge Shubb subsequently recused himself and the case was reassigned to United States

22  District Judge Edward J. Garcia.  (ECF No. 151.)

23    On April 22, 2010, a superseding indictment was filed charging movant with one count of

24  conspiracy to possess with intent to distribute at least 500 grams of a mixture or substance

25  

26  [2]  Movant was represented by retained counsel at the time of his plea and sentencing.  Thereafter, he sought the appointment of counsel on appeal and counsel was subsequently appointed.

27  

28  [3]  New counsel was appointed from the Criminal Justice Act panel to represent movant in the district court after his pro se § 2255 motion was granted.

1    containing a detectable amount of methamphetamine and one count of possession with intent to

2    distribute at least 50 grams of actual methamphetamine.  (ECF No. 174.)  On September 9, 2010,

3    movant pled guilty to both charges set forth in the superseding indictment.  (ECF No. 174.)

4    There was no plea agreement.[4]  On December 10, 2010, movant was sentenced to 324 months

5    imprisonment in the custody of the Bureau of Prisons to be followed by a 120 month term of

6    supervised release.  (ECF No. 225.)   Movant subsequently filed a timely appeal from his

7    sentence.  (ECF No. 224.)  On March 5, 2012, the Ninth Circuit Court of Appeals affirmed his

8    sentence, finding that it was substantively reasonable.  United States v. Najera-Gordillo, 470 Fed.

9    Appx. 668, 669 (9th Cir. 2012), cert. denied ___U.S.___, 133 S. Ct. 797 (2012).

10        Movant filed the instant motion pursuant to 28 U.S.C. § 2255 on June 7, 2013.  (ECF No.

11    236.)

12 **II.  Law Applicable to Motions Pursuant to 28 U.S.C. § 2255**

13        A federal prisoner making a collateral attack against the validity of his or her conviction

14    or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to

15    28 U.S.C. § 2255, filed in the court which imposed sentence.  United States v. Monreal, 301 F.3d

16    1127, 1130 (9th Cir. 2002).  Under § 2255, the federal sentencing court may grant relief if it

17    concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the

18    United States.  Davis v. United States, 417 U.S. 333, 344-45 (1974); United States v. Barron, 172

19    F.3d 1153, 1157 (9th Cir. 1999).  To warrant relief, a petitioner must demonstrate the existence of

20    an error of constitutional magnitude which had a substantial and injurious effect or influence on

21    the guilty plea or the jury's verdict.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also

22    United States v. Montalvo, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that Brecht's

23    harmless error standard applies to habeas cases under section 2255, just as it does to those under

24    section 2254.")  Relief is warranted only where a petitioner has shown "a fundamental defect

25    which inherently results in a complete miscarriage of justice."  Davis, 417 U.S. at 346.  See also

26    United States v. Gianelli, 543 F.3d 1178, 1184 (9th Cir. 2008).

27

28    _____
[4]  This is sometimes referred to as an "open" plea.

3

1    Under § 2255, "a district court must grant a hearing to determine the validity of a petition

2    brought under that section, '[u]nless the motions and the files and records of the case conclusively

3    show that the prisoner is entitled to no relief.'" United States v. Blaylock, 20 F.3d 1458, 1465

4    (9th Cir. 1994) (quoting 28 U.S.C. § 2255).  The court may deny a hearing if the movant's

5    allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible

6    or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d

7    1155, 1159 (9th Cir. 1996) (internal quotation marks omitted). See also United States v. Withers,

8    638 F.3d 1055, 1062-63 (9th Cir. 2011); United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir.

9    2003).  To warrant a hearing, therefore, the movant must make specific factual allegations which,

10   if true, would entitle him to relief. Withers, 638 F.3d at 1062; McMullen, 98 F.3d at 1159.  Mere

11   conclusory assertions in a § 2255 motion are insufficient, without more, to require a hearing.

12   United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980).

13   **III.  Movant's Claims of Ineffective Assistance of Counsel**

14       Movant raises five separate claims of ineffective assistance of trial counsel.  After setting

15   forth the applicable legal principles, the court will analyze each of these claims in turn below.

16       **A.  Law Applicable to Claims of Ineffective Assistance of Counsel**

17       The clearly established federal law governing ineffective assistance of counsel claims is

18   that set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To

19   succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was

20   deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687.  Counsel is

21   constitutionally deficient if his or her representation "fell below an objective standard of

22   reasonableness" such that it was outside "the range of competence demanded of attorneys in

23   criminal cases." Id. at 687–88 (internal quotation marks omitted).  "Counsel's errors must be 'so

24   serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v.

25   Richter, 562 U.S. 86, ___, 131 S. Ct. 770, 787-88 (2011) (quoting Strickland, 466 U.S. at 687).

26       A reviewing court is required to make every effort "to eliminate the distorting effects of

27   hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

28   conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669. See also Richter,

4

131 S. Ct. at 789 (same).  Reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).  This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1407 (2011) (internal quotation marks and alterations omitted).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.  "The likelihood of a different result must be substantial, not just conceivable." Richter, 131 S. Ct. at 792.

### B. Recommendation to Plead Guilty

Petitioner's first claim for relief is based on his contention that his appointed trial counsel rendered ineffective assistance in recommending to him that he enter an "open" plea of guilty to both of the superseding indictment's charges against him, instead of "putting the government to its burden at trial." (ECF No. 236 at 17.)  In this regard, movant argues that the only loss he would have suffered had he chosen to proceed to trial is the two-point reduction in his sentencing guideline calculation that he received pursuant to United States Sentencing Guidelines (USSG) § 3E1.1 for acceptance of responsibility.  (Id. at 18.)  He describes this as a "thirty three (33) month gamble."  (Id.)  Movant notes that he did not plead guilty early enough in the process to receive an additional point off his sentencing guideline calculation for early acceptance of responsibility pursuant to USSG § 3E1.1(b).  (Id. at 18, 19.)  In short, movant asserts that his appointed trial counsel should have advised him to go forward with a trial instead of pleading guilty, in light of the fact that he received only a two point reduction in his sentencing guideline calculation for acceptance of responsibility instead of the three point reduction that he would have received had

1   he pled guilty to the charges in the superseding indictment earlier.

2       Movant states that the government's case against him "was not necessarily a slam dunk

3   based on the years which had elapsed since the offense was committed," and that there is always

4   "doubt relative to what a jury may or may not do." (Id. at 18.) Although movant does not

5   affirmatively state he would have proceeded to trial absent his appointed counsel's advice to

6   plead guilty, he implies that he would have done so. (Id. at 18-19; ECF No. 252 at 3-4.)

7       Respondent argues that movant has failed to demonstrate his guilty plea to the charges in

8   the superseding indictment was involuntary. Respondent contends that movant now simply has

9   "buyer's remorse." (ECF No. 243 at 5.) Respondent also argues that movant's appointed trial

10  counsel's recommendation to plead guilty "appears sensible in light of the nature of the offense

11  and [movant's] arrest in possession of the methamphetamine." (Id.) Respondent notes that

12  movant's "potential exposure after trial might have been even greater than the additional 33

13  months he assumes." (Id.) In this regard, respondent points out that trial courts may impose

14  higher sentences after a trial because of additional evidence and information that might come to

15  light as a result of the trial proceedings. (Id. at 6.) Respondent also argues that movant has failed

16  to demonstrate he would have proceeded to trial absent his appointed trial counsel's advice to

17  plead guilty, in light of his statements at the change of plea colloquy that he wanted to plead

18  guilty and that he was doing so freely and voluntarily. (Id.)

19      The Strickland standard applies to claims of ineffective assistance involving counsel's

20  advice during the plea bargaining process. Missouri v. Frye, ___ U.S. ___, 132 S. Ct. 1399,

21  1404-05 (2012); Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012); Padilla v.

22  Kentucky, 559 U.S. 356 (2009); Hill v. Lockhart, 474 U.S. 52, 57-58 (1985); Nunes v. Mueller,

23  350 F.3d 1045, 1052 (9th Cir. 2003). "[W]here the issue is whether to advise the client to plead

24  or not 'the attorney has the duty to advise the defendant of the available options and possible

25  consequences' and failure to do so constitutes ineffective assistance of counsel." United States v.

26  Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting Beckham v. Wainwright, 639 F.2d 262,

27  267 (5th Cir. 1981)). The relevant question is not whether "counsel's advice [was] right or

28  wrong, but . . . whether that advice was within the range of competence demanded of attorneys in

6

criminal cases." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970) (holding that all defendants facing felony charges are entitled to the effective assistance of competent counsel).  A defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in <u>McMann</u>." <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973).  <u>See also</u> <u>Mitchell v. Superior Court for City of Santa Clara</u>, 632 F.2d 767, 769-70 (9th Cir. 1980).  In order to show prejudice in cases where a defendant claims that ineffective assistance of trial counsel led the defendant to plead guilty instead of proceeding to trial, a defendant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.

The court docket reflects that on September 9, 2010, the same day as his entry of plea on the superseding indictment, movant filed a "Statement Concerning Open Plea of Guilty" ("the Statement"). (ECF No. 207.)  That document, filed my movant's appointed attorney, reflected that movant understood the trial court would consult the Federal Sentencing Guidelines in determining his final sentence.  (<u>Id.</u> at 1-2.)  It also correctly set forth movant's possible sentence exposure on each count of the superseding indictment, including the possibility of incarceration for life, a fine of up to $4,000,000, a minimum of a five-year term of supervised release, and a ten-year mandatory minimum period of incarceration.  (<u>Id.</u>)  It also reflected movant's understanding that by pleading guilty he was giving up certain listed federal constitutional rights, including his right to a trial by jury.  (<u>Id.</u> at 3.)  The Statement also represented that movant was entering his plea of guilty voluntarily and "following consultation with and on the advice of his attorney."  (<u>Id.</u>)

The following factual basis for movant's plea was set forth in the Statement:

> On the morning of September 2, 2005, agents observed Mr. Najera-Gordillo, driving a green Honda, arrive at a restaurant located at 9170 E. Stockton Blvd., Elk Grove, California.  Surveillance agent observed co-defendant Gonzalez, the driver of a 2-door Toyota Solara bearing California license plate 5EYA954, meet with Mr. Najera-Gordillo.  After a brief conversation with Mr. Najera-Gordillo, agents observed Gonzalez get back into the Solara. Agents observed Gonzalez reach into the back seat area of the Solara.  After a few minutes, Gonzalez got out of the Toyota Solara

and got into the front passenger seat of the Honda; Mr. Najera-Gordillo had remained in the driver seat of the Honda.  After a few minutes, agents watched Gonzalez get out of the Honda and enter the restaurant.

Meanwhile, agents observed Mr. Najera-Gordillo drive away and subsequently arrive at a retail store located at 8465 Elk Grove Blvd., Elk Grove, California.

Prior to arriving at the store that morning, Mr. Najera-Gordillo had engaged in telephone conversations with reliable confidential source (CS) being used in this case.  Mr. Najera-Gordillo told the CS that his source would not deliver the entire amount of methamphetamine without receiving payment first.    The CS responded that he would not give the payment without seeing the entire delivery first.

At approximately 8:45 a.m. on September 2, agents observed Mr. Najera-Gordillo meeting with the CS in the store parking lot.  At that time, Mr. Najera-Gordillo told the CS that he had just brought one [pound of methamphetamine] and said that the remaining amount was nearby.  Agents then arrested Mr. Najera-Gordillo, who was found to be in possession of approximately one pound of a substance that field-tested positive for the presence of methamphetamine.  Lab analysis later determined that Mr. Najera-Gordillo had possessed 398.5 grams methamphetamine (actual) that was 89% pure.

During this time on September 2, other agents maintained surveillance of the Solara in the restaurant parking lot, and a law enforcement canine alerted to the presence of narcotics while walking around the outside of the car.  Defendant Gonzalez had the key to the Solara on his person.  Officers subsequently towed the Solara to the Drug Enforcement Administration offices, where a second law enforcement canine alerted to the presence of narcotics in the Solara.

Pursuant to a lawful search warrant obtained on September 2, agents uncovered what later was determined by lab analysis to be 2122 grams methamphetamine (actual) from a secret compartment located in the rear of the Solara.

(Id. at 3-5.)

The Statement also reflected that the government would not object to a two-level reduction in movant's offense level under the sentencing guidelines for acceptance of responsibility.  (Id. at 5.)  Finally, the Statement stated that movant was "pleading 'open' in order to preserve his right to have the Court determine the appropriate sentence after a full presentation in his behalf of all factors which he believes ought to be considered in that regard."  (Id. at 6.)

/////

8

1     Moreover, at his change of plea hearing on December 10, 2010, movant answered "yes"

2   when asked by the trial judge if he was prepared to plead guilty to both counts of the superseding

3   indictment with no plea agreement.  (ECF No. 243-1 at 11.)  After taking the oath, movant was

4   advised that the court would determine his sentencing range by applying the federal sentencing

5   guidelines and statutory sentencing factors.  (Id. at 12.)  Movant was further advised that he might

6   be sentenced to a higher term than that which his attorney may have predicted, or to the

7   maximum term, and that if that occurred, it would not be a basis for him to withdraw his guilty

8   plea.  (Id. at 13.)  Movant stated that he understood this.  (Id.)  The court found that movant was

9   competent to enter a plea.  (Id. at 14.)  Movant also stated that he was satisfied with his attorney's

10   representation.  (Id.)  The trial judge explained to movant the charges against him, and the

11   prosecutor advised movant of the essential elements the prosecution would be required to prove,

12   if the case proceeded to trial, beyond a reasonable doubt in order to convict him of those charges.

13   (Id. at 15.)  Movant stated that he understood the charges against him and the prosecutor's

14   explanation of what the government would be required to prove at trial, and that he was offering

15   to plead guilty to those charges.  (Id. at 16.)

16     The trial judge also explained to movant the maximum possible punishment he would

17   receive and the constitutional rights he would be giving up by pleading guilty.  (Id. at 16-18.)

18   Movant stated that he understood.  (Id. at 18.)  Movant affirmatively stated he was pleading guilty

19   freely and voluntarily upon the advice of his counsel because he was guilty of the offenses.  (Id.

20   at 19.)  Movant agreed with the factual basis for his plea, as described by the prosecutor on the

21   record.  (Id. at 20-22.)

22     Movant was then sentenced by United States District Judge Edward Garcia.  (ECF No.

23   243-1.)  Judge Garcia first stated that he had received and read the probation officer's presentence

24   report.  (Id. at 26.)  With respect to the sentencing guideline calculation, the court determined that

25   movant's adjusted base offense level was 38, which was reduced by two points for his acceptance

26   /////

27   /////

28   /////

1  of responsibility.[5]  The court also concluded that movant's criminal history category was VI.  (Id.

2  at 28.)  As a result, the court determined that the sentencing guideline range was 324 to 405

3  months imprisonment, a minimum term of supervised release of five years, and a fine range of

4  from $20,000 to $4,000,000.  (Id. at 28-29.)  Neither party objected to the presentence report or

5  the sentencing guideline calculations contained therein.  (Id. at 26-27.)  Accordingly, Judge

6  Garcia adopted those sentencing guideline calculations as set forth in the presentence report.

7       A sentencing memorandum filed by counsel on movant's behalf requested a downward

8  departure from the sentencing guideline range based upon consideration of the factors set out in

9  18 U.S.C. § 3553(a).  At the sentencing hearing, movant's counsel explained the reasons for

10 movant's failure to enter an earlier guilty plea, noted that movant had never denied responsibility

11 for his crimes, and explained that she and movant had discussed his case in depth, including the

12 calculation under the sentencing guidelines as well the possible sentence that might be imposed.

13 (Id. at 31-36.)  Defense counsel requested that the court sentence movant to no more than 15

14 years in prison.  (Id. at 37-40.)  Movant declined to address the court prior to sentence being

15 imposed.  (Id. at 41.)

16      After weighing the sentencing factors set forth in 18 U.S.C. § 3553, Judge Garcia

17 sentenced movant to 324 months imprisonment, the low end of the applicable sentencing

18 guidelines range as calculated by the court.  (Id. at 42-44.)

19      In light of this record before this court, movant has failed to demonstrate that his trial

20 counsel rendered ineffective assistance in advising him to plead guilty instead of proceeding to

21 trial.  Given the nature and amount of the evidence against movant as evidenced by the factual

22 basis for the plea, which movant admitted was accurate, and the fact that the government agreed

23

24  [5]  Respondent explains that the presentence report did not recommend that movant receive a
three level reduction in his sentencing guideline calculation for acceptance of responsibility under
25 USSG 3E1.1(b) because movant had caused a substantial expenditure of government resources by
waiting until shortly before trial to plead guilty.  (ECF No. 243 at 4 n.3.)  At his first sentencing
26 hearing in 2006, movant had entered a guilty plea early enough to receive that three-level
reduction, resulting in the imposition of a lesser sentence than the one he ultimately received after
27 pleading guilty to the superseding indictment in 2010.  Respondent states that "this accounts for
the difference in sentencing range between Najera's first and second sentencing hearings."  (Id.)
28

1   to recommend a two-level reduction for acceptance of responsibility, movant has failed to show

2   that his trial counsel's advice to plead guilty instead of risking a greater sentence after a

3   conviction was outside the range of competence demanded of attorneys in criminal cases.  The

4   record reflects that movant's appointed trial counsel advised him of his available options as well

5   as the possible consequences of pleading guilty, including his possible sentence, and that

6   movant's guilty plea to the superseding indictment's charges was voluntary,  intelligent, and

7   knowing.

8       Movant has also failed to show prejudice, or that he would have proceeded to trial had his

9   trial counsel not advised him to plead guilty.  Movant specifically affirmed at the 2010 sentencing

10  hearing that he had been advised of the constitutional rights he was giving up, and he expressed a

11  clear desire to plead guilty to the charges set out in the superseding indictment.  Aside from

12  movant's current self-serving statements, the record does not support movant's after-the-fact bare

13  assertion that he would have proceeded to trial absent his trial counsel's advice to plead guilty.

14      Because of movant's failure to establish either deficient performance on the part of his

15  appointed counsel or prejudice, he is not entitled to relief on this claim of ineffective assistance of

16  counsel.

17      **C  Double Jeopardy**

18      In his next claim for relief, movant asserts that the government's filing of a superseding

19  indictment after his original plea and sentence was set aside violated the Double Jeopardy Clause.

20  (ECF No. 236 at 20-21.)  Movant states that the superseding indictment was virtually identical to

21  the original indictment filed in his case.  (Id.)  He argues that the government improperly charged

22  him with one conspiracy in two separate indictments.  (Id.)  He also claims that his trial counsel

23  rendered ineffective assistance in failing to challenge the superseding indictment on these

24  grounds.  (Id.)  Respondent counters that under the circumstances of this case the filing of a

25  superseding indictment after movant's sentence was set aside did not violate the Double Jeopardy

26  Clause.  (ECF No. 243 at 6-7.)

27      The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be

28  subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.

> Th[e double jeopardy] guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted). In this case, movant succeeded in having his earlier plea and sentence set aside after filing a successful § 2255 motion. He was not acquitted of the charges set forth in the original indictment, he was not prosecuted for the same offense of which he had already been convicted, and he was not punished twice for the same offense. There is no double jeopardy bar to re-prosecuting movant on the original charges brought against him after he successfully challenged his original conviction and sentence by way of a motion brought under 28 U.S.C. § 2255. As explained by the United States Supreme Court,

> [T]he double jeopardy guarantee imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. To require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect.

United States v. DiFrancesco, 449 U.S. 117, 131 (1980) (internal quotations and citations omitted). See also Pearce, 395 U.S. at 720 (same). Movant has failed to cite a single case, and this court has found none, holding that the government violates the Double Jeopardy Clause in refiling charges against a defendant after the defendant has succeeded in having his sentence set aside through a successful § 2255 motion. In short, based on the authorities cited above, the government's filing of the superseding indictment under the facts of this case clearly did not violate the Double Jeopardy Clause.

Movant also contends that the filing of a superseding indictment after his original sentence was set aside violates the Ninth Circuit's holdings in United States v. Ziskin, 360 F.3d 934 (9th Cir. 2003) and United States v. Smith, 424 F.3d 992 (2005). (ECF No. 236 at 20-21.) In Ziskin, the Ninth Circuit held that the Double Jeopardy Clause "prohibits the government from splitting a single conspiracy into separate charges and bringing successive prosecutions against a

1   defendant." <u>Ziskin</u>, 360 F.3d at 943.  In that case, the government obtained a conviction against

2   defendant on conspiracy charges and then later filed another indictment against him based on

3   what the defendant alleged was the same criminal conduct.  <u>Id.</u>  Similarly, in <u>Smith</u>, the Ninth

4   Circuit held that the Double Jeopardy Clause "prohibits subdivision of a single criminal

5   conspiracy into multiple violations of one conspiracy statute."  <u>Smith</u>, 424 F.3d at 1000.  In that

6   case, the government charged defendants with three counts of conspiracy for actions that the

7   defendant argued constituted only one conspiracy.  <u>Id.</u> at 999.  Neither of these scenarios is

8   present in this case.  Movant was not convicted of one charge, only to have the government re-file

9   the same charges at a later date in an attempt to obtain a second conviction for the same

10  conspiracy.  Nor was movant charged in multiple counts of the same indictment with engaging in

11  conduct that constituted, in fact, only one, single criminal conspiracy.  Accordingly, the Ninth

12  Circuit's decisions in <u>Ziskin</u> and <u>Smith</u> do not dictate the granting of relief here.[6]

13          For the same reasons set forth above, any challenge by movant's appointed trial counsel to

14  the filing of the superseding indictment on Double Jeopardy grounds would have lacked merit.

15  Movant cannot show prejudice with respect to his claim that his appointed trial counsel rendered

16  ineffective assistance in failing to object to the superseding indictment on Double Jeopardy

17  grounds because the failure to make a meritless objection does not constitute ineffective

18  assistance.  <u>See</u> <u>Jones v. Smith</u>, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing <u>Boag v. Raines</u>,

19  769 F.2d 1341, 1344 (9th Cir. 1985) (an attorney's failure to make a meritless objection or motion

20  does not constitute ineffective assistance of counsel)); <u>see also</u> <u>Matylinsky v. Budge</u>, 577 F.3d

21  1083, 1094 (9th Cir. 2009) (counsel's failure to object to testimony on hearsay grounds was not

22  ineffective where the objection would have been properly overruled); <u>Rupe v. Wood</u>, 93 F.3d

23  1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient

24  /////

25  ───────────────────

26  [6]   Movant also cites to the decisions in <u>United States v. Stoddard</u>, 111 F.3d 1450 (9th Cir. 1997),
    in which the defendant was charged with conspiracy after having been acquitted of strikingly

27  similar charges five years earlier, and <u>United States v. Cejas</u>, 817 F.2d 595 (9th Cir. 1987), in
    which the defendant was indicted for conspiracy, when his prior conviction was arguably based

28  on the same conspiracy.  Neither of those factual scenarios is present in this case either.

1  performance").  Accordingly, movant is not entitled to relief on this aspect of his claim that he

2  received ineffective assistance from his appointed trial counsel.

3  **D. Vindictive Sentence**

4  In his next claim for relief movant argues that his 2010 sentence, which is longer than the

5  sentence he received in 2006 after entering his plea but prior to his successful § 2255 motion, was

6  imposed for vindictive reasons.  (ECF No. 236 at 21.)  Specifically, movant contends that he "was

7  ultimately penalized for his successful collateral attack."  (Id.)  He argues, "there were no

8  objections and no affirmative statement indicating changed facts occurring after the first sentence

9  was vacated which would justify the increase."  (Id. at 22.)  Movant claims that his appointed trial

10  counsel was ineffective in failing to object to his 2010 sentence on these grounds.  (Id.)

11  Respondent counters that the increase in movant's second sentence following the granting

12  of relief under § 2255 is due to the fact that in 2010 he received only a two point reduction in his

13  sentencing guideline calculation for acceptance of responsibility, whereas his first guilty plea in

14  2006 qualified him for a three level guideline reduction in his offense level for acceptance of

15  responsibility.  (ECF No. 243 at 8.)  Respondent also contends that any possibility of

16  vindictiveness was eliminated by District Judge William B. Shubb's recusal from the case and its

17  reassignment to District Judge Edward J. Garcia in 2009.  (Id.)

18  A district court violates a defendant's right to due process if it increases a sentence to

19  penalize the defendant for exercising a protected statutory or constitutional right.  United States v.

20  Goodwin, 457 U.S. 368, 372 (1982); United States v. Horob, 735 F.3d 866, 869 (9th Cir. 2013).

21  Vindictiveness is presumed whenever the trial judge increases the defendant's sentence after a

22  successful attack on the first conviction and the reasons for the increased sentence do not

23  "affirmatively appear" from the record.  Nulph v. Cook, 333 F.3d 1052, 1057 (9th Cir. 2003).

24  "Those reasons must be based upon objective information concerning identifiable conduct on the

25  part of the defendant occurring after the time of the original sentencing proceeding."  Pearce, 395

26  U.S. at 726.

27  Here, as explained above, in 2010 movant pled guilty to the charges contained in the

28  superseding indictment on the eve of trial and received only a two point reduction in his

14

1    sentencing guideline offense level for acceptance of responsibility pursuant to USSG 3E1.1(a).

2    Because movant's 2010 plea was made after the government had expended substantial time and

3    effort preparing for trial, he did not receive a three level decrease in his guideline calculation for

4    acceptance of responsibility pursuant to USSG 3E1.1(b).  Moreover, in his pre-plea statement

5    movant acknowledged that the government had indicated it would argue only for a two-level

6    reduction in his offense level for acceptance of responsibility under the sentencing guidelines.  As

7    a result of that one level change, movant's sentencing guidelines range in 2010 was determined to

8    be 324 months to 405 months imprisonment.

9         In contrast, movant's first guilty plea in 2006 was entered significantly before trial,

10   earning him the three level decrease in offense level provided by USSG 3E1.1(b).  This resulted

11   in a lower sentencing guidelines range calling for 292 months to 365 months imprisonment.  As

12   noted by respondent, movant received a sentence at the low end of the sentencing guideline range

13   both in 2006 and in 2010.

14        Because the reason for the 32-month increase in movant's sentence after his successful §

15   2255 motion affirmatively appears from the record, the presumption of vindictiveness has been

16   rebutted here.  There is no evidence in this case that movant's 2010 sentence was imposed in

17   order to penalize him for exercising his right to appeal collaterally attack his judgment and

18   sentence.  Accordingly, movant's appointed trial counsel did not render ineffective assistance in

19   failing to challenge his sentence on this ground.

20        **E.  Failure to Raise Ineffective Assistance of Counsel Claims on Appeal**

21        In his next claim for relief, movant argues that his appellate counsel rendered ineffective

22   assistance in failing to raise any claims of ineffective assistance of trial counsel on appeal.

23   Although movant does not specify the claims he believes his appellate counsel should have

24   raised, the court assumes movant is referring to his claims set forth in the § 2255 motion now

25   pending before this court and discussed above.  Noting that his appointed appellate counsel was

26   also his appointed trial counsel, movant argues, "clearly the implication is that no attorney sitting

27   in review of their own work could or would find fault or issues that merit review of themselves,

28   their judgement [sic] or advice at a court of appeals."  (ECF No. 236 at 23.)

The failure of movant's appellate counsel to raise the ineffective assistance of trial counsel claims discussed above did not constitute an error "so serious as to deprive [movant] of a fair trial." Strickland, 466 U.S. at 687.  As explained above, none of these claims for relief have merit.  An attorney's failure to raise meritless claims on appeal does not constitute ineffective assistance of counsel.  Jones, 231 F.3d at 1239 n.8 (citing Boag, 769 F.2d at 1344); see also Rhoades v. Henry, 638 F.3d 1027, 1036 (9th Cir. 2011) (counsel did not render ineffective assistance in failing to investigate or raise several arguments on appeal where "neither would have gone anywhere"); Turner v. Calderon, 281 F.3d 851, 872 (9th Cir. 2002) ("A failure to raise untenable issues on appeal does not fall below the Strickland standard"); Rupe, 93 F.3d at 1445 ("the failure to take a futile action can never be deficient performance"); Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980) ("Counsel need not appeal every possible question of law at the risk of being found to be ineffective").

In addition, as an indigent defendant movant did not have a constitutional right to compel his appointed appellate counsel to press nonfrivolous points when that counsel, as a matter of professional judgment, decided not to present those issues.  See Jones v. Barnes, 463 U.S. 745, 751–54 (1983) (an experienced attorney knows the importance of "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues").  "A brief that raises every colorable issue runs the risk of burying good arguments." Id. at 753.  Here, movant's appellate counsel raised the sole claim that his sentence was substantively unreasonable.  Najera-Gordillo, 285 Fed.Appx. at 461.  This court presumes that appellate counsel exercised her professional judgment in raising the issue on appeal that she considered to be the most meritorious.

**F.  Failure to Notify Mexican Consulate**

In his final claim for relief, movant argues that his appointed trial counsel rendered ineffective assistance in failing to determine whether the government had properly notified the Mexican Consulate pursuant to the Vienna Convention on Consular Relations (VCCR) that he

/////

/////

16

1    had been arrested, indicted, and convicted.[7]   (ECF No. 236 at 18, 24-34.)   He contends that "his

2    attorney was constitutionally deficient for failing to advise him of his rights under the VCCA and

3    to timely determine whether the government had performed its obligations upon his original

4    indictment and arrest."   (Id. at 31.)   Movant states, "there is no dispute that the authorities failed

5    to timely provide consular notification."   (Id. at 32.)

6         The United States Supreme Court has declined to resolve whether the Vienna Convention

7    grants individuals enforceable rights.   Sanchez-Llamas v. Oregon, 548 U.S. 331, 343 (2006)

8    ("Because we conclude that Sanchez–Llamas and Bustillo are not in any event entitled to relief on

9    their claims, we find it unnecessary to resolve the question whether the Vienna Convention grants

10   individuals enforceable rights.").   The Seventh Circuit has concluded that the right of a detained

11   foreign national to receive notice of his right to contact his consulate under the Vienna

12   Convention is an individually enforceable right.   Osagiede v. United States, 543 F.3d 399, 407-08

13   (9th Cir. 2008).   Other circuits, including the Ninth Circuit, have held the opposite.   See e.g.,

14   Cornejo v. County of San Diego, 504 F.3d 853, 863-64 (9th Cir. 2007) (the VCCR does not give

15   a foreign national detainee a "privately enforceable right to be notified" of his right to contact his

16   consulate under the VCCR); Bennett v. Gandara, 528 F.3d 823 (11th Cir. 2008) (same); United

17   States v. Jimenez-Nava, 243 F.3d 192, 198 (5th Cir. 2001) (same); United States v. Emuegbunam,

18   268 F.3d 377, 391 (6th Cir. 2001) (same).   Without an individually enforceable right to be

19   notified of the right to contact one's consulate under the Vienna treaty, it appears that any action

20   by movant's appointed trial counsel would have made no difference.

21        Even if movant does have a personal right to enforce the Vienna Convention, he has not

22   shown prejudice resulting from his trial counsel's failure to advise him of his rights under the

23   VCCA or to determine whether the government had notified the Mexican Consulate of his arrest,

24   indictment and conviction.   In Breard v. Greene, 523 U.S. 371, 377 (1998), the United States

25   _____

26   [7]   The Vienna Convention "is an international treaty that governs relations between individual
     nations and foreign consular officials."   Sanchez–Llamas v. Oregon, 548 U.S. 331, 336 (2006)
27   (Breyer, J., dissenting).   It requires authorities to inform a foreign national of his rights to notify
     and communicate with his country's consulate following his arrest.   Id.   As the Supreme Court
28   has observed, the Convention merely provides for consular notification of a foreign national's
     arrest; it does not guarantee intervention by the consulate.   Id. at 349.

1   Supreme Court stated that it was "extremely doubtful that the violation [of the Vienna

2   Convention] should result in the overturning of a final judgment of conviction without some

3   showing that the violation had an effect on the trial."  Here, movant contends that, had the

4   Mexican Consulate been notified of his detention, "he would have easily been aware that his

5   attorney had failed to move for dismissal of the indictment under the Due Process, or Double

6   Jeopardy Clauses of the Constitution."  (ECF No. 236 at 32.)  Movant also states that, "with

7   consular assistance, he could have protected rights and statutory benefits to which he was

8   otherwise entitled absent the errors of his attorney."  (Id. at 33.)  Such vague allegations as these

9   are insufficient to establish prejudice.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995)

10  (conclusory allegations which are not supported by a statement of specific facts do not warrant

11  habeas relief).

12       Aside from vague generalities, movant has failed to even allege facts that, if proven,

13  would demonstrate that notifying the Mexican Consulate of his detention would have had any

14  effect on his criminal proceedings.  Specifically, he has not suggested how the Mexican

15  Consulate could have assisted him in his case, or whether it would have provided any assistance

16  at all if it had been notified.  See Osagiede, 543 F.3d at 413 ("having shown that the Nigerian

17  consulate could have assisted him, he must also show that the Nigerian consulate would have

18  assisted him" (emphasis in original)); see also Martinez v. United States, Nos. CIV 09-4037, CR

19  02-40036-01, 2012 WL 928373 (D.S.C. Mar. 19, 2012) ("Movant does not explain, however,

20  how the Mexican consulate could have, or whether the consulate would have, assisted him had

21  they immediately been notified of his detention or arrest . . . [a]s a result, he cannot overcome the

22  presumption that appellate counsel acted properly by not raising the issue.").  Movant suggests

23  that other tests for prejudice may be applicable to this claim, in place of the test articulated in

24  Strickland.  (ECF No. 236 at 33.)  However, under any standard of measuring prejudice, movant's

25  claim fails.  In short he has not demonstrated in any way how the alleged failure to notify the

26  Mexican Consulate of his detention had a negative effect on his criminal proceedings.

27       Movant has also failed to demonstrate a reasonable probability that, but for his counsel's

28  unprofessional errors, the result of the proceeding would have been different.  Strickland, 466

1  U.S. at 694.  Accordingly, he is not entitled to relief with respect to his claim that his appointed

2  trial counsel rendered ineffective assistance in failing to determine whether the government had

3  properly notified the Mexican Consulate pursuant to the VCCR.

4  **IV.  Conclusion**

5      For all the reasons set forth above, IT IS HEREBY RECOMMENDED that movant's

6  motion brought pursuant to 28 U.S.C. § 2255 be denied.

7      These findings and recommendations are submitted to the United States District Judge

8  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

9  after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12  shall be served and filed within fourteen days after service of the objections.  Failure to file

13  objections within the specified time may waive the right to appeal the District Court's order.

14  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

15  1991).  In his objections movant may address whether a certificate of appealability should issue in

16  the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing

17  Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

18  enters a final order adverse to the applicant).

19  Dated:  November 17, 2014

20

21                              DALE A. DROZD

22                              UNITED STATES MAGISTRATE JUDGE

23  DAD:8:
    najera-gordillo383.2255

24

25

26

27

28